## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

| | | |
|---|---|---|
| **ELECTRONET INTERMEDIA CONSULTING, INC.,** a Florida corporation, | ) ) ) | |
| | ) | **CASE NO. 4:00CV176/RH** |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **SPRINT-FLORIDA, INCORPORATED,** a Florida corporation, | ) ) | |
| | ) | |
| **Defendant.** | ) | |
| ——————————————— | ) | |

## DEFENDANT SPRINT-FLORIDA, INCORPORATED'S
## PROPOSED REQUESTS TO CHARGE AND PROPOSED VERDICT FORM

Defendant, SPRINT-FLORIDA, INCORPORATED ("Sprint-Florida"), hereby files its proposed requests to charge and proposed verdict form. The citations and authority given herein are for the reference of the Court only, and are not intended to be part of the charge. Sprint-Florida submits its proposed requests to charge and proposed verdict form without waiver of or prejudice to arguments and issues presented in Sprint-Florida's pending motion for summary judgment.

U.S. DISTRICT CT.
NORTHERN DIST. FLA.
TALLAHASSEE, FLA.

2001 SEP 17  PM 5: 03

FILED

# INDEX TO SPRINT-FLORIDA'S PROPOSED REQUESTS TO CHARGE AND PROPOSED VERDICT FORM

I.     REQUESTS FOR SPECIFIC STANDARD INSTRUCTIONS ..............................1

II.    PROPOSED INSTRUCTIONS FOR USE DURING TRIAL ................................2
       1.    Cautionary Instruction Before Court Recess ..................................2
       2.    Deposition as Substantive Evidence .............................................3
       3.    Use of Interrogatories ...................................................................4
       4.    Limited Purpose Evidence .............................................................5

III.   PROPOSED JURY INSTRUCTIONS AT THE CLOSE OF EVIDENCE ...........6
       5.    Attempted Monopolization -- Elements ..........................................6
       6.    Attempted Monopolization -- Monopoly Power Defined ...........................8
       7.    Attempted Monopolization -- Relevant Market:  General ..........................9
       8.    Attempted Monopolization -- Relevant Product Market ...........................10
       9.    Attempted Monopolization -- Relevant Geographic Market ....................12
       10.   Attempted Monopolization -- Relevant Market:  Necessity of Proof ........13
       11.   Attempted Monopolization -- Specific Intent ............................................14
       12.   Attempted Monopolization -- Exclusionary or Restrictive Conduct .........16
       13.   Attempted Monopolization -- Dangerous Probability of Success .............18
       14.   Attempted Monopolization -- Interstate Commerce ..................................20
       15.   Attempted Monopolization -- Essential Facility ......................................22
       16.   Attempted Monopolization -- Injury and Causation ..................................23
       17.   Attempted Monopolization -- Damages:  Amount and Certainty ..............25
       18.   Lanham Act Section 43(a) -- Elements ....................................................26
       19.   Lanham Act Section 43(a) -- False or Misleading Statement of Fact ........27
       20.   Lanham Act Section 43(a) -- Commercial Advertising or Promotion .......28
       21.   Lanham Act Section 43(a) -- Deception or Tendency to Deceive ..............29
       22.   Lanham Act Section 43(a) -- Materiality ..................................................30
       23.   Lanham Act Section 43(a) -- Interstate Commerce ..................................31
       24.   Lanham Act Section 43(a) -- Proof of Damages ......................................32
       25.   Lanham Act Section 43(a) -- Compensatory Damages .............................33
       26.   Lanham Act Section 43(a) -- Recovery of Defendant's Profits ..................35
       27.   Fraud -- Generally ....................................................................................36
       28.   Fraud -- Elements of Fraud .......................................................................37
       29.   Fraud -- Reliance .......................................................................................39
       30.   Fraud -- Bad Faith .....................................................................................40
       31.   Fraud -- Fraud Not Presumed ...................................................................41
       32.   Fraud -- Proof of Damages ........................................................................42
       33.   Fraud -- Calculation of Damages ..............................................................43
       34.   Breach of Contract -- Generally ................................................................44
       35.   Breach of Contract -- Limitation of Liability Clause ................................45
       36.   Breach of Contract -- Calculation of Damages .........................................46
       37.   Duty to Mitigate ........................................................................................47
       38.   Sprint-Florida's Counterclaim for Breach of Contract ..............................48
       39.   Effect of Instruction as to Damages ..........................................................49
       40.   Attorneys' Fees and Costs .........................................................................50

IV.    SPRINT-FLORIDA'S PROPOSED VERDICT FORM ........................................51

.

**ElectroNet Intermedia Consulting, Inc. v. Sprint-Florida, Inc.: Case No. 4:00cv176/RH**

**I.   DEFENDANT'S REQUESTS TO INCLUDE SPECIFIC STANDARD INSTRUCTIONS**

As part of the Court's standard instructions, Sprint-Florida respectfully requests the Court

to include the following basic instructions from the Eleventh Circuit's Pattern Jury Instructions --

Civil (2000):

| | | |
|---|---|---|
| 1 | -- | Introduction |
| 2.2 | -- | Consideration of The Evidence<br>Duty to Follow Instructions<br>Corporate Party Involved |
| 3 | -- | Credibility of Witnesses |
| 4.1 | -- | Impeachment of Witnesses<br>Inconsistent Statement |
| 5.1 | -- | Expert Witnesses General Instruction |
| 6.2 | -- | Burden of Proof<br>When There Are Multiple Claims or<br>When Both Plaintiff and Defendant or Third Parties Have Burden of Proof |
| 7.2 | -- | Duty to Deliberate When Both Plaintiff and Defendant Claim Damages or<br>When Damages Are Not An Issue |
| 8 | -- | Election of Foreperson<br>Explanation of Verdict Form(s) |

<u>**ElectroNet Intermedia Consulting, Inc. v. Sprint-Florida, Inc.**</u>**: Case No. 4:00cv176/RH**

**II.     DEFENDANT'S PROPOSED INSTRUCTIONS FOR USE DURING TRIAL**

**DEFENDANT'S REQUEST TO CHARGE NO. 1 :**

**CAUTIONARY INSTRUCTION BEFORE COURT RECESS**

We are about to take our first recess. I want to remind you of the instructions I gave you earlier. Until the trial is over, you are not to discuss this case with anyone, including other jurors, members of your family, people involved in the trial, or anyone else. You may not permit others to discuss the case with you. If anyone approaches you and tries to talk to you about the case, please let me know about it immediately.

Do not read or listen to any news reports of the trial. If a newspaper headline or news broadcast catches your attention, do not examine the article or watch or listen to the broadcast any further. The person who wrote or is reporting the story may not have listened to all the testimony, may be getting information from persons whom you will not see here in court under oath and subject to cross examination. The report may emphasize an unimportant point or may simply be wrong. You must base your verdict solely and exclusively on the evidence received in court during the trial.

Finally, you are reminded to keep an open mind until all the evidence has been received and you have heard the arguments of counsel, the instructions of the court, and the views of your fellow jurors.

If you need to speak with me about anything, simply give a signed note to the bailiff or clerk to give to me.

**AUTHORITY:**

*Federal Jury Practice and Instructions*, Vol. 3, § 102.01 ("Cautionary Instruction Before Court Recess") .

**ElectroNet Intermedia Consulting, Inc. v. Sprint-Florida, Inc.: Case No. 4:00cv176/RH**

## DEFENDANT'S REQUEST TO CHARGE NO. 2:

## DEPOSITION AS SUBSTANTIVE EVIDENCE

Testimony will now be presented through a deposition. A deposition contains the sworn, recorded answers to questions asked a witness in advance of the trial. A witness' testimony may sometimes be presented in the form of a deposition if the witness is not present. Some time before this trial, attorneys representing the parties in this case questioned this witness under oath. A court reporter was present and recorded the testimony. The questions and answers will be read to you now.

**AUTHORITY:**

*Federal Jury Practice and Instructions*, Vol. 3, § 102.23 ("Deposition as Substantive Evidence"); Fed. R. Civ. P. 32.

<u>**ElectroNet Intermedia Consulting, Inc. v. Sprint-Florida, Inc.**</u>: **Case No. 4:00cv176/RH**

## DEFENDANT'S REQUEST TO CHARGE NO. 3:

## USE OF INTERROGATORIES

Evidence will now be presented to you in the form of written answers of one of the parties to written interrogatories submitted by the other side. These answers were given in writing and under oath before this trial in response to written questions.

You must give the answers the same consideration as if the answers were made from the witness stand.

**AUTHORITY:**

*Federal Jury Practice and Instructions*, Vol. 3, § 102.24 ("Use of Interrogatories").

<u>**ElectroNet Intermedia Consulting, Inc. v. Sprint-Florida, Inc.**</u>**:   Case No. 4:00cv176/RH**

**DEFENDANT'S REQUEST TO CHARGE NO. 4:**

**LIMITED PURPOSE EVIDENCE**

The evidence you are about to hear has been admitted for a limited purpose.  You must consider this evidence only for that limited purpose and for no other.

**AUTHORITY:**

*Federal Jury Practice and Instructions*, Vol. 3, § 102.40 ("Limited Purpose Evidence").

**ElectroNet Intermedia Consulting, Inc. v. Sprint-Florida, Inc.: Case No. 4:00cv176/RH**

**III.   DEFENDANT'S PROPOSED INSTRUCTIONS AT THE CLOSE OF EVIDENCE**

**DEFENDANT'S REQUEST TO CHARGE NO. 5:**

**ATTEMPTED MONOPOLIZATION – ELEMENTS**

ElectroNet asserts a claim under the antitrust laws that it was injured by Sprint-Florida's unlawful attempt to monopolize.  In order to prevail on its claim of attempted monopolization, ElectroNet must prove each of the following seven elements by a preponderance of the evidence:

(1)     the existence of its alleged relevant market, which, as I will explain in more detail below, in this case ElectroNet contends is the retail sale of DSL Internet access services, and no other forms of Internet access service, for both business and residential customers in Leon County, Florida;

(2)     that Sprint-Florida was a competitor in the relevant market alleged by ElectroNet;

(3)     that Sprint-Florida had a specific intent to monopolize the relevant market;

(4)     that Sprint-Florida engaged in exclusionary or restrictive conduct in furtherance of its specific intent;

(5)     that there was a dangerous probability that Sprint-Florida would sooner or later achieve its goal of monopoly power in the relevant market;

(6)     that Sprint-Florida's conduct occurred in or affected interstate commerce; and

(7)     that ElectroNet was injured in its business or property by Sprint-Florida's exclusionary or restrictive conduct.

If you find that ElectroNet has not carried its burden of proving any one or more of these elements, then you must return a verdict for Sprint-Florida on ElectroNet's attempt to monopolize claim.

**AUTHORITY:**

*Sample Jury Instructions in Civil Antitrust Cases, Section of Antitrust Law of the American Bar Association*, C-80 (1999 ed.); *Spectrum Sports v. McQuillan*, 506 U.S. 447, 459 (1993).

**ElectroNet Intermedia Consulting, Inc. v. Sprint-Florida, Inc.:** Case No. 4:00cv176/RH

## DEFENDANT'S REQUEST TO CHARGE NO. 6:

### ATTEMPTED MONOPOLIZATION – MONOPOLY POWER DEFINED

Monopoly power is the power to dominate or control a market. This means the power to control prices and exclude competition in the relevant market for a relatively permanent period of time.

The power to control prices is the power of a company to establish appreciably higher prices for its goods than those charged by competitors for equivalent goods without a substantial loss of business to competitors for a relatively permanent period of time.

The power to exclude competition means the power of a company to dominate a market by eliminating existing competition from that market and by preventing new competition from entering the market for a relatively permanent period of time.

**AUTHORITY:**

*Sample Jury Instructions in Civil Antitrust Cases, Section of Antitrust Law of the American Bar Association,* C-4 (1999 ed.); *American Tobacco Co. v. United States,* 328 U.S. 781, 811 (1946); *Midwestern Waffles, Inc. v. Waffle House, Inc.,* 734 F.2d 705, 713 (11th Cir. 1984) .

<u>ElectroNet Intermedia Consulting, Inc. v. Sprint-Florida, Inc.</u>: Case No. 4:00cv176/RH

## DEFENDANT'S REQUEST TO CHARGE NO. 7:

## ATTEMPTED MONOPOLIZATION – RELEVANT MARKET:  GENERAL

The existence of monopoly power, or the potential for monopoly power, must be judged within an economically meaningful market, or what is called a relevant market.

Defining the relevant market is essential because you are required to make a judgment about whether Sprint-Florida attempted to, and was likely to, attain power over prices or competition.  To do so, you must be able to determine what economic forces, if any, restrain its freedom to act as it pleases.  One important restraining force will be competition and potential competition from other firms and their products.  This includes all firms and products, including the expected or potential entry of firms and products, that act as real and practical restraints on Sprint-Florida's power to set prices as it pleases.  All the firms and products that exert this restraining force are considered to be within what is called the relevant market.

There are two aspects that must be considered in defining a relevant market.  The first is the relevant product market; the second is the relevant geographic market.

**AUTHORITY:**

*Sample Jury Instructions in Civil Antitrust Cases, Section of Antitrust Law of the American Bar Association,* C-6 (1999 ed.); *Levine v. Central Florida Medical Affiliates,* 72 F.3d 1538, 1556 (11th Cir. 1996).

**ElectroNet Intermedia Consulting, Inc. v. Sprint-Florida, Inc.: Case No. 4:00cv176/RH**

## DEFENDANT'S REQUEST TO CHARGE NO. 8:

### ATTEMPTED MONOPOLIZATION – RELEVANT PRODUCT MARKET

The basic idea of a relevant product market is that the products within it are reasonable substitutes from a buyer's point of view; that is, the products compete with each other. This does not mean that products must be identical to be in the same relevant product market. It means that, as a matter of practical fact, the products are reasonable substitutes for the buyer's needs. In this case, ElectroNet contends that the relevant product market is high-speed Internet access service for business and residential customers. ElectroNet contends that the only form of high-speed Internet access in the relevant market during the relevant time period was DSL. Sprint-Florida contends that the relevant market in this case includes all high-speed Internet access products, including DSL, cable modem, wireless, and satellite products. Sprint-Florida also contends that the relevant market in which ElectroNet competed during the relevant time period includes only products sold to businesses.

There are a number of factors you may consider in determining whether products are reasonable substitutes for each other. One test is whether the price of one product influences the price of other products, or whether changes in the price of one product would cause a considerable number of customers to switch from one product to another. If so, the products are in the same market. You may also consider how people in the industry and the public at large view the products; whether the products have the same or similar characteristics or uses; whether the products have similar prices; whether changes in the price of one product are followed by changes in the price of another product; whether the products are sold to similar customers; and whether they are distributed and sold by the same kinds of distributors or dealers.

10

In sum, to determine the relevant product market, you must decide which products compete with each other.  This is a practical determination.  Products do not have to be identical to be in the same relevant market, but they must compete meaningfully with each other.

**AUTHORITY:**

*Sample Jury Instructions in Civil Antitrust Cases, Section of Antitrust Law of the American Bar Association*, C-7 (1999 ed.); *United States v. E.I. du Pont de Nemours & Co.*, 351 U.S. 377, 395 (1956); *U.S. Anchor Mfg., Inc. v. Rule Industries, Inc.*, 7 F.3d 986, 995 (11th Cir. 1993).

**ElectroNet Intermedia Consulting, Inc. v. Sprint-Florida, Inc.**: Case No. 4:00cv176/RH

## DEFENDANT'S REQUEST TO CHARGE NO. 9:

### ATTEMPTED MONOPOLIZATION – RELEVANT GEOGRAPHIC MARKET

The other aspect of relevant market to be considered is the geographic area within which the products compete. This area of effective competition need not be of any particular size. For example, it can be as large as the United States or as small as a single community. The relevant geographic market is the area in which the defendant faces competition from suppliers that are in the relevant product market, and to which a buyer can practicably turn for supplies. A product need not be available to all customers in the geographic market for the product to be considered a part of that geographic market.

In this case, ElectroNet and Sprint-Florida agree that the relevant geographic market in this case is Leon County, Florida.

**AUTHORITY:**

*Sample Jury Instructions in Civil Antitrust Cases, Section of Antitrust Law of the American Bar Association*, C-11 and C-12 (1999 ed.); *United States v. Phillipsburg Nat'l Bank & Trust Co.*, 399 U.S. 350, 362-65 (1970); *United States v. Grinnell*, 384 U.S. 563, 571 (1966); *United States v. Englehard Corp.*, 126 F.3d 1302, 1306 (11th Cir. 1997); *RSR Corp. v. FTC*, 602 F.2d 1317, 1322-24 (9th Cir. 1979).

**ElectroNet Intermedia Consulting, Inc. v. Sprint-Florida, Inc.: Case No. 4:00cv176/RH**

**DEFENDANT'S REQUEST TO CHARGE NO. 10:**

**ATTEMPTED MONOPOLIZATION – RELEVANT MARKET: NECESSITY OF PROOF**

If after considering all of the evidence you find that ElectroNet has proved its alleged relevant product market and that Sprint-Florida competed in that market, then you must find that ElectroNet has established the relevant market requirement and you must consider the remaining elements of its antitrust claims. If you find that ElectroNet has not carried its burden of proving its alleged relevant product market, or if you find that Sprint-Florida does not compete in that market, then you must return a verdict for Sprint-Florida on ElectroNet's attempted monopolization claim.

**AUTHORITY:**

*Sample Jury Instructions in Civil Antitrust Cases, Section of Antitrust Law of the American Bar Association*, C-13 (1999 ed.); *Levine v. Central Florida Medical Affiliates*, 72 F.3d 1538, 1556 (11th Cir. 1996); *Nifty Foods v. Great Atlantic & Pac. Tea Co.*, 614 F.2d 832, 840 (2d Cir. 1980).

**ElectroNet Intermedia Consulting, Inc. v. Sprint-Florida, Inc.: Case No. 4:00cv176/RH**

## DEFENDANT'S REQUEST TO CHARGE NO. 11:

### ATTEMPTED MONOPOLIZATION – SPECIFIC INTENT

If you find that ElectroNet has proved its alleged relevant market and that Sprint-Florida competes in that market, you must then decide whether Sprint-Florida had the specific intent to monopolize that market. In other words, you must decide if ElectroNet has proven that Sprint-Florida acted with the conscious object of acquiring the power to control prices and to exclude or destroy competition for a relatively permanent period of time in the relevant market.

There are several ways in which ElectroNet may prove that Sprint-Florida had the specific intent to monopolize. There may be evidence of direct statements of Sprint-Florida's intent to obtain a monopoly in the relevant market. Such proof of specific intent may be established by documents prepared by responsible officers or employees of Sprint-Florida at about the time of the conduct in question or by testimony concerning statements made by responsible officers or employees of Sprint-Florida. Evidence of Sprint-Florida's intent to compete aggressively, however, is not evidence of an intent to monopolize. Moreover, evidence of harm to one or more competitors, without any intent to harm competition or consumers generally, is not evidence of an intent to monopolize. In deciding whether or not Sprint-Florida acted with the specific intent to monopolize the relevant market, you should consider whether Sprint-Florida believed that it had the power to exclude non-DSL competitors such as cable modem, wireless, or satellite providers from the relevant market for a relatively permanent period of time. If you conclude that ElectroNet has not proven that Sprint-Florida believed that it had the power to exclude cable modem, wireless, or satellite providers from the relevant market for a relatively permanent

14

period of time, then you must conclude that Sprint-Florida could not have acted with the specific intent to monopolize the relevant market.

   If you find that ElectroNet has not carried its burden of proving that Sprint-Florida had the specific intent to monopolize the relevant market, then you must return a verdict for Sprint-Florida on ElectroNet's attempt to monopolize claim.

**AUTHORITY:**

*Sample Jury Instructions in Civil Antitrust Cases, Section of Antitrust Law of the American Bar Association*, C-86 and C-87 (1999 ed.); *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 458-59 (1993); *Times-Picayune Pub. Co. v. United States*, 345 U.S. 594, 626 (1953); *Retina Assoc., P.A. v. Southern Baptist Hospital of Florida, Inc.*, 105 F.3d 1376, 1385 (11th Cir. 1997).

**ElectroNet Intermedia Consulting, Inc. v. Sprint-Florida, Inc.: Case No. 4:00cv176/RH**

**DEFENDANT'S REQUEST TO CHARGE NO. 12:**

**ATTEMPTED MONOPOLIZATION –
EXCLUSIONARY OR RESTRICTIVE CONDUCT**

Another element of the offense of attempt to monopolize is whether Sprint-Florida engaged in exclusionary or restrictive conduct in furtherance of its specific intent.

The offense of attempt to monopolize is concerned only with acts or practices that have the actual or reasonably foreseeable effect of substantially impairing competition in a relevant market in an unreasonably restrictive way or of destroying competition. The antitrust laws encourage vigorous competition, and the mere fact that one company is successful in winning sales or market share from its competitors does not mean that its conduct is exclusionary or anticompetitive. Conduct that injures only specific competitors, such as ElectroNet, but not competition and consumers in general is not anticompetitive under the antitrust laws. Conduct that involves the introduction of superior products, the lowering of production costs, the exercise of superior business judgment, or reasonably responding to competition can never be found to be exclusionary or restrictive.

As an incumbent local telephone company, Sprint-Florida has certain special obligations under the federal Telecommunications Act. Violations of the Telecommunications Act, without more, are not exclusionary or restrictive acts under the antitrust laws.

Although the exclusionary or restrictive acts need not have been sufficient in themselves to bring about a monopoly, ElectroNet must prove that the acts or practices engaged in by Sprint-Florida had a significant exclusionary or restrictive effect or are of the type which, if continued, are likely to result ultimately in a monopoly in the relevant market.

16

If you find that ElectroNet has not carried its burden of proving that Sprint-Florida

engaged in any exclusionary or restrictive conduct, then you must return a verdict for Sprint-

Florida and against ElectroNet on ElectroNet's attempt to monopolize claim.


**AUTHORITY:**

*Sample Jury Instructions in Civil Antitrust Cases, Section of Antitrust Law of the American Bar Association*, C-20 and C-84 (1999 ed.); *U.S. Anchor Mfg., Inc. v. Rule Industries, Inc.*, 7 F.3d 986, 1002 (11th Cir. 1993); *Schuylkill Energy Res., Inc. v. Pennsylvania Power & Light Co.*, 113 F.3d 405, 413 n.6 (3d Cir. 1997) September 20, 2000 Order at 2 n.1.

**ElectroNet Intermedia Consulting, Inc. v. Sprint-Florida, Inc.: Case No. 4:00cv176/RH**

**DEFENDANT'S REQUEST TO CHARGE NO. 13:**

**ATTEMPTED MONOPOLIZATION – DANGEROUS PROBABILITY OF SUCCESS**

If you find that Sprint-Florida had the specific intent to achieve a monopoly and engaged in significant exclusionary or restrictive conduct, you must also determine if ElectroNet has proven the next element of attempt to monopolize; namely, that there was a dangerous probability that Sprint-Florida would sooner or later succeed in achieving its intended monopoly if it continued to engage in the same or similar conduct. In determining whether there was a dangerous probability of success, you should consider the following four factors for the entire time period for which ElectroNet seeks damages:

(1)     the market share and power of Sprint-Florida as compared to other competitors;

(2)     the size and number of competitors in the market, and the market share of each;

(3)     whether cable modem, wireless, or satellite providers did or would provide effective competition within a reasonable period of time; and

(4)     the actual or probable impact on competition of Sprint-Florida's restrictive or exclusionary acts or practices.

A dangerous probability of success need not mean that success was nearly certain. It means that the chance of success was substantial and real; that is, that there was a reasonable likelihood that Sprint-Florida would ultimately achieve its alleged goal of monopoly power in the relevant market and maintaining that power for a relatively permanent period of time.

If you find that Sprint-Florida's market share in the relevant market was less than 50% at the time the alleged anticompetitive conduct began and throughout the time it was alleged to have continued, you must find Sprint-Florida had no dangerous probability of success. If you

18

find that ElectroNet has proven that Sprint-Florida's market share in the relevant market was 50% or greater, then you should consider all the evidence to determine if Sprint-Florida had a dangerous probability of successfully monopolizing the relevant market for a relatively permanent period of time.  The mere fact that Sprint-Florida's market share may have been 50% or greater does not show that it had a dangerous probability of success.  If Sprint-Florida's market share was 50% or greater, then you must consider the length of time in which it had at least a 50% market share in the relevant market and the extent of the danger that Sprint-Florida would obtain and maintain monopoly power for a relatively permanent period.

If you find that ElectroNet has not carried its burden of proving that Sprint-Florida had a dangerous probability of successfully monopolizing the relevant market, then you must return a verdict for Sprint-Florida on ElectroNet's attempt to monopolize claim.


**AUTHORITY:**

*Sample Jury Instructions in Civil Antitrust Cases, Section of Antitrust Law of the American Bar Association*, C-89 (1999 ed.); *U.S. Anchor Mfg., Inc. v. Rule Industries, Inc.*, 7 F.3d 986, 1000-01 (11th Cir. 1993); *Norton Tire Co., Inc. v. Tower Kingdom Co., Inc.*, 858 F.2d 1533, 1535 (11th Cir. 1988); *United States v. Syufy Enters.*, 903 F.2d 659, 665 (9th Cir. 1990).

**ElectroNet Intermedia Consulting, Inc. v. Sprint-Florida, Inc.: Case No. 4:00cv176/RH**

**DEFENDANT'S REQUEST TO CHARGE NO. 14:**

**ATTEMPTED MONOPOLIZATION – INTERSTATE COMMERCE**

To prevail on its claim of attempt to monopolize, ElectroNet must prove by a preponderance of the evidence that the alleged conduct or restraint was imposed directly on goods or services in the flow of interstate commerce. Interstate commerce refers to transactions in goods or services between one or more persons in one state and one or more persons in another state.

The unlawful acts or practices of an attempt to monopolize may have a substantial effect on interstate commerce even though Sprint-Florida is not engaged in activities in interstate commerce and even though some or all of the activities may have been carried out wholly within one state.

The conduct alleged by ElectroNet or the activities of Sprint-Florida that were affected by the unlawful acts must have had some effect upon interstate commerce. The amount, quantity, or value of interstate commerce involved or affected is unimportant.

If you find that ElectroNet has not carried its burden of proving that Sprint-Florida's acts and conduct had some effect on interstate commerce, then you must return a verdict for Sprint-Florida on ElectroNet's attempt to monopolize claim.

**AUTHORITY:**

*Sample Jury Instructions in Civil Antitrust Cases, Section of Antitrust Law of the American Bar Association*, A-14 and A-15 (1999 ed.); *McLain v. Real Estate Board of New Orleans*, 444 U.S. 232, 242 (1980).

**ElectroNet Intermedia Consulting, Inc. v. Sprint-Florida, Inc.: Case No. 4:00cv176/RH**

**DEFENDANT'S REQUEST TO CHARGE NO. 15:**

**ATTEMPTED MONOPOLIZATION – ESSENTIAL FACILITY**

ElectroNet has alleged as part of its attempt to monopolize claim that Sprint-Florida denied ElectroNet access to a facility essential to competition in the marketplace. This claim requires that you examine Sprint-Florida's conduct under what is called the "essential facility" theory of antitrust liability according to the following principles of law.

Ordinarily, a company may deal or refuse to deal with whomever it pleases, as long as it acts independently. A company that has exclusive control over a facility essential to competing in the relevant market, however, often may not deny potential competitors access to that facility if to do so would create or maintain monopoly power in the same relevant market. A facility is essential to effective competition if it is impracticable to compete without it in the relevant market. However, even a monopolist may refuse to deal if valid business reasons exist for that refusal.

ElectroNet alleges that Sprint-Florida denied it access to Sprint-Florida's local telecommunications network without a valid business reason. To succeed on its essential facility claim, ElectroNet must have proved each of the following seven elements by a preponderance of the evidence:

(1)     that Sprint-Florida's local network is a facility that is essential to provide service in the relevant market;

(2)     that there are no alternative facilities that ElectroNet, or any other actual or potential competitor, could use to provide service in the relevant market;

21

(3)     that Sprint-Florida's local network could not practically or economically be duplicated by potential competitors;

(4)     that ElectroNet could use Sprint-Florida's local network without interfering with Sprint-Florida's use or significantly inhibiting Sprint-Florida's ability to conduct its business;

(5)     that Sprint-Florida completely denied ElectroNet access to Sprint-Florida's local network for a relatively permanent period of time;

(6)     that the alleged refusal to grant ElectroNet access to Sprint-Florida's local network was not supported by legitimate business reasons; and

(7)     that the alleged refusal to grant ElectroNet access to Sprint-Florida's local network was intended to or had the effect of creating or maintaining monopoly power in a relevant market.

If you find that ElectroNet has not carried its burden of proving any one or more of these elements of its "essential facility" claim, then you cannot find in favor ElectroNet on its attempt to monopolize claim on the basis of the essential facility theory. If you find that ElectroNet has proved each of the elements of the essential facilities theory, you should apply this theory in evaluating each of the elements of ElectroNet's attempt to monopolize claim.

**AUTHORITY:**

*MCI Communications Co. v. American Tel. & Tel.*, 708 F.2d 1081, 1132-33 (7th Cir. 1983); *Alaska Airlines, Inc. v. United Airlines, Inc.*, 948 F.2d 536, 544 n.11 (9th Cir. 1991); *Blue Cross & Blue Shield v. Marshfield Clinic*, 65 F.3d 1406, 1412-13 (7th Cir. 1995); *Laurel Sand & Gravel, Inc. v. CSX Transp., Inc.*, 924 F.2d 539, 544-45 (4th Cir. 1991); *Flip Side Prod., Inc. v. Jam Prod., Ltd.*, 843 F.2d 1024, 1033-34 (7th Cir. 1988); *Morris Communications Corp. v. PGA Tour, Inc.*, 117 F. Supp. 2d 1322, 1327 (M.D. Fla. 2000); *Florida Cities v. Florida Power & Light Co.*, 525 F. Supp. 1000, 1004-05 (S.D. Fla. 1981); *Ideal Dairy Farms v. John Labatt, Ltd.*, 90 F.3d 737, 748 (3d Cir. 1996); *Servicetrends, Inc. v. Siemens Med. Sys. Inc.*, 870 F. Supp. 1042, 1056-57 (N.D. Ga. 1994); *Valet Apt. Servs. Inc. v. Atlanta Journal & Constitution*, 865 F. Supp. 828, 833 (N.D. Ga. 1994).

**ElectroNet Intermedia Consulting, Inc. v. Sprint-Florida, Inc.: Case No. 4:00cv176/RH**

**DEFENDANT'S REQUEST TO CHARGE NO. 16:**

**ATTEMPTED MONOPOLIZATION – INJURY AND CAUSATION**

If you find that ElectroNet has carried its burden of proving its attempt to monopolize claim, you must then decide if ElectroNet is entitled to recover damages from Sprint-Florida.

The law provides that anyone who is injured by an antitrust violation may recover damages for an injury to its business or property caused by the violation.

In order for ElectroNet to carry its burden of proving that it is entitled to recover damages, it must prove that it was injured as a result of Sprint-Florida's alleged violation of the antitrust laws. This is sometimes referred to as "causation" or "fact of damage." ElectroNet is only required to prove that it was in fact injured by Sprint-Florida's alleged antitrust violation.

It is important to understand that antitrust laws are intended to protect competition, not competitors. This means that to recover damages, ElectroNet must show that its own injury coincides with injury to competition and consumers which was caused by Sprint-Florida's alleged violation. In other words, ElectroNet must show that its alleged harms reflect harm to competition, and not just harm to ElectroNet's business interests. Therefore, even if you find that ElectroNet has established that it was in fact injured, if you find that ElectroNet has failed to prove that Sprint-Florida's alleged violation harmed competition and consumers, you must return a verdict for Sprint-Florida on the attempt to monopolize claim.

If you find that ElectroNet has established that it was in fact injured, and that ElectroNet's injury coincides with injury to competition and consumers, you may then consider the amount of ElectroNet's damages. It is important to understand, however, that injury and amount of damage

are different concepts and that you cannot consider the amount of damage unless you have concluded that ElectroNet has established that it was in fact injured.

To establish injury, ElectroNet must have offered evidence that establishes as a matter of fact and with a fair degree of certainty that Sprint-Florida's alleged illegal conduct was a material cause of ElectroNet's injury. This means that ElectroNet must have proved that some damage flowed to it as a result of Sprint-Florida's alleged antitrust violation. ElectroNet is not required to prove that Sprint-Florida's alleged antitrust violation was the sole cause of its injury; nor need ElectroNet eliminate all other possible causes of injury to establish causation. It is enough if ElectroNet has proved that the alleged antitrust violation was a material cause of its injury. However, if you find that ElectroNet's injury was caused solely by something other than the alleged antitrust violation, then you must find that ElectroNet has failed to prove that it is entitled to recover damages from Sprint-Florida, and you must return a verdict for Sprint-Florida on ElectroNet's attempt to monopolize claim.


**AUTHORITY:**

*Sample Jury Instructions in Civil Antitrust Cases, Section of Antitrust Law of the American Bar Association*, F-2 and F-3 (1999 ed.); *McClure v. Undersea Industries, Inc.*, 671 F.2d 1287, 1289 (11th Cir. 1982); *United States v. Microsoft Corp.*, 2001 WL 721343, at *16 (D.C. Cir. 2001); *Todorov v. DCH Healthcare Authority*, 921 F.2d 1438, 1449-50 (11th Cir. 1991); *L.A. Draper & Son v. Wheelabrator-Frye, Inc.*, 735 F.2d 414, 421 (11th Cir. 1984).

**ElectroNet Intermedia Consulting, Inc. v. Sprint-Florida, Inc.**: Case No. 4:00cv176/RH

## DEFENDANT'S REQUEST TO CHARGE NO. 17:

## ATTEMPTED MONOPOLIZATION – DAMAGES:  AMOUNT AND CERTAINTY

If you find that Sprint-Florida violated the antitrust laws and that this violation caused injury to ElectroNet, then you must determine the amount of damages, if any, ElectroNet is entitled to recover.  If you find that ElectroNet has been injured by a violation of the antitrust laws by Sprint-Florida, the law provides that ElectroNet should be fairly compensated for all damages to its business and property which were a direct result or likely consequence of the conduct which you have found to be unlawful.  A defendant's violation of the antitrust laws often creates a situation in which it is hard to determine the precise amount of damages suffered by the plaintiff.  ElectroNet's right to be fairly compensated should not be affected by any difficulty you may have in determining the precise amount of the recovery so long as there is a reasonable basis in the evidence for your award.  You may not, however, calculate damages based only on speculation or guesswork, and you must remember that you can award ElectroNet damages only for injuries caused by a violation of the antitrust laws.  You may not award damages for injuries or losses caused by other factors.  You may only award damages in an amount proved by ElectroNet.

**AUTHORITY:**

*Sample Jury Instructions in Civil Antitrust Cases, Section of Antitrust Law of the American Bar Association*, F-8, F-12 (1999 ed.); *Bigelow v. RKO Radio Pictures, Inc.*, 327 U.S. 251, 264 (1946); *Eastman Kodak Co. v. Southern Photo Co.*, 273 U.S. 359, 379 (1927); *Construction Aggregate Transport, Inc. v. Florida Rock Industries, Inc.*, 710 F.2d 752, 785-86 (11th Cir. 1983).

**ElectroNet Intermedia Consulting, Inc. v. Sprint-Florida, Inc.**: Case No. 4:00cv176/RH

## DEFENDANT'S REQUEST TO CHARGE NO. 18:

### LANHAM ACT SECTION 43(a) – ELEMENTS

The plaintiff, ElectroNet, alleges a claim against Sprint-Florida for "false promotion" or "false advertising" under a federal law called the Lanham Act because, it contends, Sprint-Florida told customers calling to inquire about obtaining DSL service from Sprint-Florida that the customer could have DSL service installed in five days and that those statements were inaccurate. I will refer to this claim as the "false advertising and promotion claim."

To prevail on its false advertising and promotion claim, ElectroNet has the burden of proving, by a preponderance of the evidence, each of the following five elements:

(1)     Sprint-Florida made a false representation of fact about its own or another's product or services in commercial advertising or promotion;

(2)     the statement actually deceived or had the tendency to deceive a substantial segment of it audience;

(3)     the deception is material, in that it is likely to influence the purchasing decision;

(4)     the defendant caused its false statement to enter interstate commerce; and

(5)     ElectroNet has been or is likely to be injured as a result of the false statement by a causally related diversion of sales or by a lessening of the goodwill associated with its products.

If ElectroNet has failed to prove the existence of any one of these five elements, you must return a verdict for Sprint-Florida on ElectroNet's false advertising and promotion claim.

**AUTHORITY**:

15 U.S.C. § 1125(a)(1)(B); *Pizza Hut, Inc. v. Papa John's International, Inc.*, 227 F.3d 489, 495 (5th Cir. 2000), *cert. denied*, 121 S. Ct. 1355 (2001); *BellSouth Adv. & Pub. Corp. v. Lambert Publishing*, 45 F. Supp. 2d 1316, 1320 (S.D. Ala. 1999); *Tire Kingdom, Inc. v. Morgan Tire & Auto, Inc.*, 915 F. Supp. 360, 364 (S.D. Fla. 1996), *aff'd*, 136 F.3d 139 (11th Cir. 1998).

26

**ElectroNet Intermedia Consulting, Inc. v. Sprint-Florida, Inc.: Case No. 4:00cv176/RH**

**DEFENDANT'S REQUEST TO CHARGE NO. 19:**

**LANHAM ACT SECTION 43(a) – FALSE OR MISLEADING STATEMENT OF FACT**

To prevail on its false advertising and promotion claim, ElectroNet must prove by a preponderance of the evidence that Sprint-Florida made a false or misleading statement of fact in commercial advertising about a product. To carry its burden on this issue, ElectroNet must demonstrate that Sprint-Florida made a statement in commercial advertising or promotion that either was literally false, or, if not literally false, was likely to mislead and confuse consumers. If the statement in question is literally false, ElectroNet need not show that the statement either actually deceived customers or was likely to do so. On the other hand, if the statement is literally true or ambiguous, ElectroNet must prove that the statement is misleading in context by demonstrated actual consumer confusion. In assessing whether Sprint-Florida's statements were either false or misleading, you must view the statement(s) in the light of the overall context in which it appears.

If you find that ElectroNet has not carried its burden of proving that Sprint-Florida's statements were either false or misleading, you must return a verdict in favor of Sprint-Florida on ElectroNet's false advertising and promotion claim.

**AUTHORITY:**

*Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 820 (7th Cir. 1999); *BellSouth Adv. & Pub. Corp. v. Lambert Publishing*, 45 F. Supp. 2d 1316, 1320 (S.D. Ala. 1999).

<u>**ElectroNet Intermedia Consulting, Inc. v. Sprint-Florida, Inc.**</u>: Case No. 4:00cv176/RH

**DEFENDANT'S REQUEST TO CHARGE NO. 20:**

**LANHAM ACT SECTION 43(a) – COMMERCIAL ADVERTISING OR PROMOTION**

Additionally, in order to carry its burden of proving the first element of its false advertising and promotion claim that Sprint-Florida made a false or misleading statement of fact about a product, ElectroNet must demonstrate that Sprint-Florida's alleged statements were made in the context of "commercial advertising." A statement was made in the context of "commercial advertising" if it was (1) commercial speech; (2) by a party who is in commercial competition with the defendant; (3) for the purpose of influencing customers to purchase defendant's goods or services; and (4) must be disseminated sufficiently to the relevant purchasing public to constitute "advertising" or "promotion" within that industry. If you find that the statements by Sprint-Florida of which ElectroNet complains do not constitute "commercial advertising," you must return a verdict for Sprint-Florida on ElectroNet's false advertising and promotion claim.

**AUTHORITY:**

*Seven-Up Co. v. Coca-Cola Co.*, 86 F.3d 1379, 1384 (5th Cir. 1996); *BellSouth Adv. & Pub. Corp. v. Lambert Publishing*, 45 F. Supp. 2d 1316, 1323 (S.D. Ala. 1999).

<u>**ElectroNet Intermedia Consulting, Inc. v. Sprint-Florida, Inc.**</u>**: Case No. 4:00cv176/RH**

**DEFENDANT'S REQUEST TO CHARGE NO. 21:**

**LANHAM ACT SECTION 43(a) – DECEPTION OR TENDENCY TO DECEIVE**

If you find that Sprint-Florida's statements were not literally false but rather were only misleading, you must then determine if the statements were deceptive or had the tendency to deceive consumers. ElectroNet must prove by a preponderance of the evidence that consumers were actually deceived by Sprint-Florida's ambiguous or true-but-misleading statements. If you find that ElectroNet has not carried its burden of proving that Sprint-Florida's statements were deceptive or had a tendency to deceive consumers, you must return a verdict for Sprint-Florida on ElectroNet's false advertising and promotion claim.

**AUTHORITY:**

*American Counsel of Certified Podiatric Physicians v. American Counsel of Podiatric Surg.*, 185 F.3d 606, 616 (6th Cir. 1999); *BellSouth Adv. & Pub. Corp. v. Lambert Publishing*, 45 F. Supp. 2d 1316, 1324 (S.D. Ala. 1999).

**ElectroNet Intermedia Consulting, Inc. v. Sprint-Florida, Inc.: Case No. 4:00cv176/RH**

**DEFENDANT'S REQUEST TO CHARGE NO. 22:**

**LANHAM ACT SECTION 43(a) – MATERIALITY**

To prevail on its claim of false advertising and promotion, ElectroNet must prove by a preponderance of the evidence that Sprint-Florida's false or misleading statements were material. Materiality is defined in terms of the statement's propensity to have some effect on consumers' purchasing decisions – in other words, whether the statement is likely to have caused consumers to purchase a product they likely would not have otherwise purchased.  In assessing whether a given statement is material, the relevant perspective is that of the consumers'.  If you find that ElectroNet has not carried its burden of proving that Sprint-Florida's statements were material -- that is, that the statements had some effect on consumers' purchasing decisions -- then you must return a verdict in favor of Sprint-Florida on ElectroNet's false advertising and promotion claim.

**AUTHORITY:**

*Nat'l Basketball Ass'n v. Motorola, Inc.,* 105 F.3d 841, 855 (2d Cir. 1997); *Tire Kingdom, Inc. v. Morgan Tire & Auto, Inc.*, 915 F. Supp. 360, 365 (S.D. Fla. 1996), *aff'd*, 136 F.3d 139 (11th Cir. 1998); *Federal Express Corp. v. U.S. Postal Service*, 40 F. Supp. 2d 943, 953 (W.D. Tenn. 1999).

**ElectroNet Intermedia Consulting, Inc. v. Sprint-Florida, Inc.: Case No. 4:00cv176/RH**

**DEFENDANT'S REQUEST TO CHARGE NO. 23:**

**LANHAM ACT SECTION 43(a) – INTERSTATE COMMERCE**

ElectroNet must prove by a preponderance of the evidence that Sprint-Florida's false advertising and promotion affected interstate commerce. Interstate commerce refers to transactions in goods or services between one or more persons in one state and one or more persons in another state. ElectroNet must establish that Sprint-Florida's false advertising and promotion affected interstate commerce across state lines or between citizens of the United States. If you find that ElectroNet has not carried its burden of showing that Sprint-Florida's false advertising and promotion had some effect on interstate commerce, then you must return a verdict for Sprint-Florida on ElectroNet's false advertising and promotion claim.

**AUTHORITY:**

*University of Florida v. KPB, Inc.*, 89 F.3d 773, 775-76 (11th Cir. 1996); *Pickard v. Auto Publisher, Inc.*, 735 F.2d 450, 453 n.1 (11th Cir. 1984); *Tax Cap Committee v. Save Our Everglades, Inc.*, 933 F. Supp. 1077, 1081 (S.D. Fla. 1996).

31

<u>**ElectroNet Intermedia Consulting, Inc. v. Sprint-Florida, Inc.**</u>: Case No. 4:00cv176/RH

**DEFENDANT'S REQUEST TO CHARGE NO. 24:**

**LANHAM ACT SECTION 43(a) – PROOF OF DAMAGES**

ElectroNet is seeking money damages for its false advertising and promotion claim. To recover damages for its false advertising and promotion claim, ElectroNet has the burden of proving by a preponderance of the evidence that it has been damaged by actual consumers' reliance on the false or misleading statements. In other words, ElectroNet must prove both actual damages and a causal link between Sprint-Florida's conduct and those damages. If you find that ElectroNet has not carried its burden of proving that it has suffered damages by actual consumer reliance on Sprint-Florida's false or misleading statements, you must return a verdict in favor of Sprint-Florida on ElectroNet's false advertising and promotion claim.

**AUTHORITY:**

*Balance Dynamics Corp. v. Schmitt Industries*, 204 F.3d 683, 694-95 (6th Cir.), *cert. denied*, __ U.S. __, 121 S. Ct. 306 (2000); *Hot Wax, Inc. v. Turtle Wax, Inc.,* 191 F.3d 813, 819-20 (7th Cir. 1999); *Blue Dane Simmental Corp. v. American Simmental Ass'n*, 178 F.3d 1035, 1042 (8th Cir. 1999).

**ElectroNet Intermedia Consulting, Inc. v. Sprint-Florida, Inc.: Case No. 4:00cv176/RH**

**DEFENDANT'S REQUEST TO CHARGE NO. 25:**

**LANHAM ACT SECTION 43(a) – COMPENSATORY DAMAGES**

If you find for the plaintiff ElectroNet on its false advertising and promotion claim, you must determine ElectroNet's compensatory damages. ElectroNet has the burden of proving compensatory damages by a preponderance of the evidence.

Compensatory damages consist of the plaintiff's direct economic losses and out-of-pocket expenses resulting from the effect of the defendant's conduct on the plaintiff. In other words, compensatory damages means the amount of money that will reasonably and fairly compensate ElectroNet for any injury you find was caused by Sprint-Florida's false advertising and promotion. The basic question for your consideration is: what is the amount of money required to right the wrong allegedly done to ElectroNet by Sprint-Florida's false advertising and promotion? In determining compensatory damages, the difficulty or uncertainty in ascertaining the precise amount of any damages does not preclude recovery. Instead, you should use your best judgment in determining the amount of such damages. You may not, however, determine damages by speculation or conjecture.

In assessing compensatory damages, you should consider whether Sprint-Florida's false advertising and promotion caused by the following:

(1)     any injury to ElectroNet's reputation;

(2)     any injury to the product's or ElectroNet's goodwill, as that term is defined in this Instruction, including injury to ElectroNet's general business reputation;

(3)     any loss of ElectroNet's sales; and

(4)     any loss of ElectroNet's profits.

In addition, you may also consider any evidence that Sprint-Florida's false advertising and promotion will necessitate prospective costs, including any expense incurred by ElectroNet in preventing customers from being deceived, misled, or confused, or any cost of future corrective advertising reasonably required to correct any customer confusion.  Lastly, you may consider any other factors that bear on ElectroNet's actual damages.

In assessing damages for injury to ElectroNet's goodwill, you are instructed that the goodwill of a company is an intangible business value that reflects the basic human tendency to do business with merchants who offer products of the type and quality the customer desires and expects.  The goodwill attached to a product is often a part of the company's overall goodwill.  It is possible, therefore, that the general goodwill of a company may be damages by the loss of goodwill to a product.  Whether this has occurred is a question of fact for you to answer.

If you find that ElectroNet's goodwill has been damaged, either by injury to its general business reputation, or by injury to the goodwill of the product, you may assess whatever compensatory damages you find justified by the evidence.  The measure of ElectroNet's damage is the difference between the value of such goodwill before and after the acts of Sprint-Florida.

The fact that Sprint-Florida did not actually intend, anticipate, or contemplate that any of these categories of compensatory damages would occur is not a basis for you to deny awarding the damages to ElectroNet.  If you find that the evidence before you is insufficient to show that ElectroNet has sustained any substantial damages, then you may return a verdict for ElectroNet on its false advertising and promotion claim and fix the amount of the compensatory damages in a nominal sum such as One Dollar ($1.00).

**AUTHORITY:**

4 *Modern Federal Jury Instructions (Civil)*, Instr. 86A-22, 86A-23; 15 U.S.C. § 1117(a).

**ElectroNet Intermedia Consulting, Inc. v. Sprint-Florida, Inc.: Case No. 4:00cv176/RH**

**DEFENDANT'S REQUEST TO CHARGE NO. 26:**

**LANHAM ACT SECTION 43(a) – RECOVERY OF DEFENDANT'S PROFITS**

As an additional category of compensatory damages, ElectroNet is entitled to any profits earned by Sprint-Florida that are attributable to Sprint-Florida's false advertising and promotion. You may not, however, include in any award of such profits any amount that you are already took into account in assessing compensatory damages under prior instructions. You also should not assume that Sprint-Florida earned any profits from its sale of DSL products due to its alleged false advertising and promotion; these are matters of fact that must be proved.

Profit is determined by deducting all expenses from gross revenue. Gross revenue is all of Sprint-Florida's receipts from its false advertising and promotion. ElectroNet has the burden of proving Sprint-Florida's gross receipts by a preponderance of the evidence.

Expenses are all costs incurred in producing the gross revenue. Sprint-Florida has the burden of proving the expenses. Sprint-Florida also bears the burden of proving that any portion of the profit is attributable to factors other than the false advertising and promotion. Sprint-Florida must prove each of these by a preponderance of the evidence.

Unless you find that a portion of the profit from the false advertising and promotion is attributable to factors other than the false advertising and promotion, you shall find that the total profit is attributable to the false advertising and promotion.

**AUTHORITY:**

4 *Modern Federal Jury Instructions (Civil)*, Instr. 86A-24; 15 U.S.C. § 1117(a).

**ElectroNet Intermedia Consulting, Inc. v. Sprint-Florida, Inc.: Case No. 4:00cv176/RH**

**DEFENDANT'S REQUEST TO CHARGE NO. 27:**

**FRAUD – GENERALLY**

Plaintiff ElectroNet also contends that Sprint-Florida committed fraud -- that Sprint-Florida made certain allegedly false and fraudulent misrepresentations to ElectroNet. The term "fraud" is generally defined in the law as an intentional misrepresentation of material existing fact made by one person to another with knowledge of its falsity; made for the purpose of inducing the other person to act; and upon which the other person does in fact rely with resulting injury or damage.

In this case, the alleged misrepresentations that ElectroNet claims to have been made by Sprint-Florida are:

- One, ElectroNet claims that Sprint-Florida made fraudulent misrepresentations in early 1998, prior to the execution of the Interconnection Agreement, that it could not provide interim pricing for UNEs including copper circuits for ElectroNet; and

- Two, ElectroNet claims that Sprint-Florida made fraudulent misrepresentations in providing maps to ElectroNet in July and August 1999, which contained materially false information regarding the availability of DSL services that ElectroNet could offer in Leon County.

**AUTHORITY:**

*Pattern Jury Instructions -- Civil Cases -- 11th Circuit* (Fraud, State Claims Instr. 3.1); First Amended Complaint, ¶¶ 160-61.

**ElectroNet Intermedia Consulting, Inc. v. Sprint-Florida, Inc.: Case No. 4:00cv176/RH**

**DEFENDANT'S REQUEST TO CHARGE NO. 28:**

**FRAUD – ELEMENTS OF FRAUD**

Each of the two alleged misrepresentations described above should be considered and judged separately in accordance with the instructions that follow.  It is not necessary that ElectroNet prove both of the alleged misrepresentations in order to recover.  To prevail on its claim of fraud, therefore, ElectroNet must prove each of the following facts by a preponderance of the evidence:

(1)  that Sprint-Florida made one or more alleged misrepresentations;

(2)  that the misrepresentation related to a material existing fact;

(3)  that Sprint-Florida knew or should have known that the misrepresentation was false;

(4)  that Sprint-Florida intended to induce ElectroNet to rely and act upon the misrepresentation; and

(5)  that ElectroNet reasonably relied upon the misrepresentation and suffered injury or damage as a result.

In the verdict form that I will explain in a moment, you will be asked to answer a series of questions concerning each of these factual issues.

To make a "misrepresentation" simply means to state as a fact something that is false or untrue.  To constitute fraud, a misrepresentation must not only be false, it must also be "material" in the sense that it relates to a matter of some importance or significance rather than a minor or trivial detail.  A material fact is one that is of such importance that ElectroNet would not have acted but for the false statement.  To constitute fraud, a misrepresentation must also relate to an "existing fact."  Ordinarily, a promise to do something in the future does not relate to an existing

fact and cannot be the basis of a claim for fraud unless the person who made the promise did so without any present intent to perform it or with a positive intent not to perform it.  Similarly, a mere expression of opinion does not relate to an existing fact and cannot be the basis of a claim of fraud unless the person stating the opinion has exclusive or superior knowledge of existing facts that are inconsistent with such opinion.

To carry its burden of proving fraud, ElectroNet must also prove that Sprint-Florida made the misrepresentation knowingly and intentionally, not as a result of mistake or accident. ElectroNet must prove that Sprint-Florida either knew or should have known of the falsity of the misrepresentation, or that Sprint-Florida made the misrepresentation in disregard of its truth or falsity.  Finally, ElectroNet must prove that Sprint-Florida intended for ElectroNet to rely upon the misrepresentation, that ElectroNet did in fact rely upon the misrepresentation, and that ElectroNet suffered injury or damage as a result of the fraud.

**AUTHORITY:**

*Pattern Jury Instructions -- Civil Cases -- 11th Circuit* (Fraud , State Claims Instr. 3.1); *Florida Standard Jury Instructions, Fraudulent Misrepresentation* (2001 Edition), MI 8.

**ElectroNet Intermedia Consulting, Inc. v. Sprint-Florida, Inc.: Case No. 4:00cv176/RH**

**DEFENDANT'S REQUEST TO CHARGE NO. 29:**

**FRAUD – RELIANCE**

In determining whether ElectroNet has established that one or more acts of Sprint-Florida constituted fraud, ElectroNet has the burden of proving by the preponderance of the evidence that it relied on the acts or conduct of Sprint-Florida and that such reliance was reasonable.  In other words, the law requires "reasonable reliance" upon the material misrepresentation, which is a test of subjective reliance.  Not only must ElectroNet have actually relied on the information provided by Sprint-Florida, this reliance must have been "justifiable," meaning that with the exercise of reasonable diligence, ElectroNet still could not have discovered the truth behind the fraudulent misrepresentation or that the representation was false and should not be relied upon.

If ElectroNet proves that Sprint-Florida made a material misrepresentation with the intention that ElectroNet rely upon it, then, under the law, ElectroNet may rely upon the truth of the representation even though its falsity could have been discovered and ElectroNet made an investigation, unless ElectroNet knows the representation to be false or its falsity is obvious.

If you find that ElectroNet has not carried its burden of proving that it relied on Sprint-Florida's misrepresentations and that such reliance was reasonable, then you must return a verdict for Sprint-Florida on ElectroNet's fraud claim.

**AUTHORITY:**

*Davis v. McDonald's Corp.*, 44 F. Supp. 2d 1251, 1261 (N.D. Fla. 1998);  *Barnes v. Burger King Corp.*, 932 F. Supp. 1420, 1428 (S.D. Fla. 1996); *First Union Discount Brokerage Services v. Milos*, 744 F. Supp. 1145, 1156 (S.D. Fla. 1990), *aff'd*, 997 F.2d 835 (11th Cir. 1993).

**ElectroNet Intermedia Consulting, Inc. v. Sprint-Florida, Inc.: Case No. 4:00cv176/RH**

## DEFENDANT'S REQUEST TO CHARGE NO. 30:

### FRAUD – BAD FAITH

Further, in order to recover for fraud, ElectroNet must prove that Sprint-Florida acted in bad faith toward ElectroNet. "Bad faith" is defined as the opposite of good faith, generally implying or involving actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive.

If you find that ElectroNet has not carried its burden of proving that Sprint-Florida acted in bad faith toward ElectroNet, then you must return a verdict for Sprint-Florida on ElectroNet's fraud claim.


**AUTHORITY:**

*First Interstate Dev. Corp. v. Ablanedo*, 511 So. 2d 536, 539 (Fla. 1987) (per curiam); *Parker v. State of Florida Board of Regents*, 724 So. 2d 163, 169 (Fla. 1st DCA 1998); *Port Largo Club, Inc. v. Warren*, 476 So. 2d 1330, 1333-34 (Fla. 3d DCA 1985) (quoting Black's Law Dictionary at 127 (5th ed. 1979)).

**ElectroNet Intermedia Consulting, Inc. v. Sprint-Florida, Inc.: Case No. 4:00cv176/RH**

**DEFENDANT'S REQUEST TO CHARGE NO. 31:**

**FRAUD – FRAUD NOT PRESUMED**

Fraud is never presumed, but must always be proved by a preponderance of the evidence.

You should assume that persons are fair and honest in their dealings until the contrary appears from the evidence.

If a transaction that is called into question is equally capable of two interpretations, one honest and the other fraudulent, it should be found to be honest.


**AUTHORITY:**

*Federal Jury Practice and Instructions*, Vol. 3, § 123.10 ("Fraud Not Presumed"); *In re Hillsborough Holdings Corp.*, 176 B.R. 223, 245 (M.D. Fla. 1994); *Sponholtz v. Sponholtz*, 190 So. 2d 572 (Fla. 1966); *Reina v. Gingerale Corp.*, 472 So. 2d 530, 531 (Fla. 3d DCA 1985).

**ElectroNet Intermedia Consulting, Inc. v. Sprint-Florida, Inc.: Case No. 4:00cv176/RH**

## DEFENDANT'S REQUEST TO CHARGE NO. 32:

### FRAUD – PROOF OF DAMAGES

For injury or damage to be the result of fraud, ElectroNet must prove that, except for the fraud, the injury or damage would not have occurred. In other words, there must be actual damage for recovery in a fraud action, and the damage must be directly attributable to the alleged misrepresentations, as opposed to some other cause. Fraud that does not result in damage is not actionable. Additionally, the damage attributable to the fraud must be separate from the damages flowing from a breach of contract.

If you find that ElectroNet has not proven that it suffered actual damages from the acts of Sprint-Florida that it contends constitute fraud, or that such damages are not separate from ElectroNet's damages, if any, flowing from a breach of contract, then you must return a verdict for Sprint-Florida on ElectroNet's fraud claim.


**AUTHORITY:**

*Pattern Jury Instructions -- Civil Cases -- 11th Circuit* (Fraud (With Defense Of Waiver), State Claims Instr. 3.1); *Williams Elec. Co. v. Honeywell, Inc.,* 772 F. Supp. 1225, 1237 (N.D. Fla. 1991); *Casey v. Welch,* 50 So. 2d 124 (Fla. 1951); *National Aircraft Services, Inc. v. Aeroserv International, Inc.*, 544 So. 2d 1063 (Fla. 3d DCA 1989); *National Equipment Rental, Ltd. v. Little Italy Restaurant & Delicatessen, Inc.*, 362 So. 2d 338 (Fla. 4th DCA 1978); *AFM Corp. v. Southern Bell Telephone & Telegraph Co.*, 515 So. 2d 180 (Fla. 1987).

**ElectroNet Intermedia Consulting, Inc. v. Sprint-Florida, Inc.:** Case No. 4:00cv176/RH

## DEFENDANT'S REQUEST TO CHARGE NO. 33:

### FRAUD – CALCULATION OF DAMAGES

If you find for defendant Sprint-Florida on ElectroNet's claim for fraud, you will not

consider the matter of damages for fraud.  But, if you find for ElectroNet, you should award

ElectroNet an amount of money that the greater weight of the evidence shows will fairly and

adequately compensate ElectroNet for the harm it incurred as a result of Sprint-Florida's fraud.

In considering the issue of ElectroNet's damages resulting from Sprint-Florida's fraud, you are

instructed that you should assess the amount you find to be justified by a preponderance of the

evidence as full, just and reasonable compensation for all of ElectroNet's damages resulting from

the fraud, no more and no less.  Compensatory damages are not allowed as a punishment and

must not be imposed or increased to penalize Sprint-Florida.  Also, compensatory damages must

not be based on mere speculation or guesswork because it is only actual damages that are

recoverable.


**AUTHORITY:**

*Florida Standard Jury Instructions, Fraudulent Misrepresentation* (2001 Edition), MI 8;
*Pattern Jury Instructions -- Civil Cases -- 11th Circuit* (Fraud, State Claims Instr. 3.1).

**ElectroNet Intermedia Consulting, Inc. v. Sprint-Florida, Inc.: Case No. 4:00cv176/RH**

## DEFENDANT'S REQUEST TO CHARGE NO. 34:

### BREACH OF CONTRACT – GENERALLY

In this action, ElectroNet and Sprint-Florida entered into a written contract called an "Interconnection Agreement," as required by the Telecommunications Act of 1996. A contract is an agreement establishing the parties' rights and duties. ElectroNet contends that Sprint-Florida breached certain provisions contained in the Interconnection Agreement.

The issue for your determination on ElectroNet's claim for breach of contract is whether Sprint-Florida failed to perform its duties under the Interconnection Agreement and, if so, whether that failure to perform was a legal cause of damages to ElectroNet. Failure to perform one's duties under a contract is a legal cause of damage if it directly and in natural and continuous sequence produces or contributes substantially to producing damage, so that it can reasonably be said that, but for the failure to perform, the damage would not have occurred.

If you find that ElectroNet has not carried its burden of proving that Sprint-Florida breached the Interconnection Agreement and that ElectroNet sustained damages as a result of the breach, you must return a verdict for Sprint-Florida on ElectroNet's breach of contract claim.


**AUTHORITY:**

*Florida Standard Jury Instructions, Breach of Contract* (2001 Edition), MI 12.1.

<u>**ElectroNet Intermedia Consulting, Inc. v. Sprint-Florida, Inc.**</u>: **Case No. 4:00cv176/RH**

**DEFENDANT'S REQUEST TO CHARGE NO. 35:**

**BREACH OF CONTRACT – LIMITATION OF LIABILITY CLAUSE**

The Interconnection Agreement between ElectroNet and Sprint-Florida contains the following provisions:

> Except as otherwise set forth in this Agreement, neither Party shall be responsible to the other for any indirect, special, consequential or punitive damages, including (without limitation) damages for loss of anticipated profits or revenue or other economic loss in connection with or arising from anything said, omitted, or done hereunder (collectively "Consequential Damages"), whether arising in contract or tort, provided that the foregoing shall not limit a Party's obligation under Section 9 to indemnify, defend, and hold the other Party harmless against amounts payable to third parties.

> The Parties recognize and agree that [the Florida Public Service Commission] has continuing jurisdiction to implement and enforce all terms and conditions of this Agreement. Accordingly, the Parties agree that any dispute arising out of or relating to this Agreement that the Parties themselves cannot resolve may be submitted to the Commission for resolution.

You are instructed that contract language must be given its plain meaning and that clauses in contracts that limit a party's liability or set forth where a party should file a lawsuit when it claims that contract has been breached are valid and enforceable.

**AUTHORITY:**

Interconnection Agreement, §§ 9, 22.1; *Interfirst Federal Savings Bank v. Burke,* 672 So. 2d 90 (Fla. 2d DCA 1996); *Manrique v. Fabbri*, 493 So. 2d 437, 439 (Fla. 1986); *America Online, Inc. v. Booker*, 781 So. 2d 423, 424 (Fla. 3d DCA 2001).

**ElectroNet Intermedia Consulting, Inc. v. Sprint-Florida, Inc.: Case No. 4:00cv176/RH**

## DEFENDANT'S REQUEST TO CHARGE NO. 36:

## BREACH OF CONTRACT – CALCULATION OF DAMAGES

If you find that ElectroNet has carried its burden of proving that Sprint-Florida breached

the Interconnection Agreement and sustained damages as a result of the breach, you should

award ElectroNet an amount of money that the greater weight of the evidence shows will fairly

and adequately compensate it for damages caused by Sprint-Florida's breach. ElectroNet has the

burden of proving all elements of damages by a preponderance of the evidence. ElectroNet is

entitled to recover damages that will put it in the same position it would have been in had Sprint-

Florida performed its duties under the Interconnection Agreement. However, ElectroNet is

entitled to recover only those damages that the parties reasonably could have anticipated, at the

time they entered into the Interconnection Agreement, probably would result from Sprint-

Florida's breach of the agreement.

**AUTHORITY:**

*Florida Standard Jury Instructions, Breach of Contract* (2001 Edition), Misc. 12.1; *Carpenter Contractors of America, Inc. v. Fastener Corp. of America, Inc.*, 611 So. 2d 564 (Fla. DCA 4th 1992).

<u>**ElectroNet Intermedia Consulting, Inc. v. Sprint-Florida, Inc.**</u>: **Case No. 4:00cv176/RH**

**DEFENDANT'S REQUEST TO CHARGE NO. 37:**

**DUTY TO MITIGATE**

In assessing any damages you may decide to award ElectroNet under any of its causes of action, you are instructed that any person who claims damages as a result of an alleged wrongful act on the part of another has a duty under the law to "mitigate" those damages -- that is, to take advantage of any reasonable opportunity that may have existed under the circumstances to reduce or minimize the loss or damage.

If you find from a preponderance of the evidence that the plaintiff ElectroNet failed to seek out or take advantage of a business opportunity that was reasonably available to it under all the circumstances shown by the evidence, then you should reduce the amount of ElectroNet's damages by the amount that could have been reasonably realized if ElectroNet had taken advantage of such opportunity.

**AUTHORITY**:

*Pattern Jury Instructions -- Civil Cases -- 11th Circuit* (Supplemental Damages Instructions, Duty to Mitigate in General, Instr. 1.1).

47

**ElectroNet Intermedia Consulting, Inc. v. Sprint-Florida, Inc.: Case No. 4:00cv176/RH**

## DEFENDANT'S REQUEST TO CHARGE NO. 38:

### SPRINT-FLORIDA'S COUNTERCLAIM FOR BREACH OF CONTRACT

Sprint-Florida has asserted a counterclaim against ElectroNet for breach of contract, contending that ElectroNet has not paid Sprint-Florida for services Sprint-Florida provided ElectroNet under the parties' Interconnection Agreement. Sprint-Florida has the burden of proving by a preponderance of the evidence that ElectroNet breached its obligations under the Interconnection Agreement and sustained the damages as a result of the breach. If you find that Sprint-Florida has carried its burden of proving that ElectroNet breached the Interconnection Agreement and that it has sustained damages as a result of the breach, you should award Sprint-Florida an amount of money that the greater weight of evidence shows will fairly and adequately compensate it for damages caused by ElectroNet's breach. Sprint-Florida is entitled to recover damages that will put it in the same position that it would have been in if ElectroNet had performed its duties under the Interconnection Agreement.

**AUTHORITY:**

*Florida Standard Jury Instructions, Breach of Contract* (2001 Edition), Misc. 12.1; *Carpenter Contractors of America, Inc. v. Fastener Corp. of America, Inc.*, 611 So. 2d 564 (Fla. DCA 4th 1992).

**ElectroNet Intermedia Consulting, Inc. v. Sprint-Florida, Inc.: Case No. 4:00cv176/RH**

**DEFENDANT'S REQUEST TO CHARGE NO. 39:**

**EFFECT OF INSTRUCTION AS TO DAMAGES**

The fact that I have instructed you as to the proper measure of damages should not be considered as indicating any view of mine as to which party is entitled to your verdict in this case. Instructions as to the measure of damages are given for your guidance only in the event you should find in favor of ElectroNet on one or more of its claims against Sprint-Florida or in favor of Sprint-Florida on its counterclaim against ElectroNet from a preponderance of the evidence in the case in accordance with the other instructions.

**AUTHORITY**:

*Federal Jury Practice and Instructions*, Vol. 3, § 106.02 ("Effect of Instruction as to Damages")

<u>**ElectroNet Intermedia Consulting, Inc. v. Sprint-Florida, Inc.**</u>: **Case No. 4:00cv176/RH**

**DEFENDANT'S REQUEST TO CHARGE NO. 40:**

**ATTORNEYS' FEES AND COURT COSTS**

In determining whether and how much to award in damages, you must not take into account any consideration of attorneys' fees or court costs in deciding the amount of damages. The matter of attorney's fees and court costs will be decided later by the Court.

**AUTHORITY**:

*Pattern Jury Instructions -- Civil Cases -- 11th Circuit* (Attorneys Fees and Court Costs, Instr. 6.1)

## IV.   **DEFENDANT'S PROPOSED VERDICT FORM**

We, the jury, empaneled and sworn in the above entitled cause, do, upon our oaths, find

as follows:

### PART I – ElectroNet's Claim for Attempt to Monopolize

1.   Has ElectroNet proven by a preponderance of the evidence that the relevant
     market is limited to DSL Internet access services and that the relevant market did
     not also include cable modem, wireless, or satellite Internet access services, in
     Leon County, Florida?

               Yes ____              No ____

     *If Yes, go to Question 2; if No, proceed to Part II.*

2.   Has ElectroNet proven by a preponderance of the evidence that, for the provision
     of broadband Internet access services in Leon County, Florida, business
     customers and residential customers are in the same relevant market?

               Yes ____              No ____

     *If Yes, go to Question 3; if No, proceed to Part II*

3.   Has ElectroNet proven by a preponderance of the evidence that Sprint-Florida is a
     competitor in the relevant market?

               Yes ____              No ____

     *If Yes, go to Question 4; if No, proceed to Part II.*

4.   Has ElectroNet proven by a preponderance of the evidence that Sprint-Florida had
     a specific intent to monopolize the relevant market?

               Yes ____              No ____

     *If Yes, go to Question 5; if No, proceed to Part II.*

5.   Has ElectroNet proven by a preponderance of the evidence that Sprint-Florida
     engaged in exclusionary or restrictive conduct in furtherance of its specific intent
     to monopolize the relevant market?

               Yes ____              No ____

*If Yes, go to Question 6; if No, proceed to Part II.*

6.   Has ElectroNet proven by a preponderance of the evidence that there was a dangerous probability that Sprint-Florida could have succeeded in monopolizing the relevant market?

Yes _____                    No _____

*If Yes, go to Question 7; if No, proceed to Part II.*

7.   Has ElectroNet proven by a preponderance of the evidence that it was injured in its business or property by Sprint-Florida's anticompetitive conduct?

Yes _____                    No _____

*If Yes, go to Question 8; if No, proceed to Part II.*

8.   Has ElectroNet proven by a preponderance of the evidence that its injury, if any, coincided with harm to competition and consumers caused by Sprint-Florida's anticompetitive conduct?

Yes _____                    No _____

*If Yes, go to Question 9; if No, proceed to Part II.*

9.   If you have answered "Yes" to each of the Questions in this Part I, please state the damages you believe ElectroNet has proved for its claim of attempted monopolization:

$_____

*Proceed to Part II.*

## **PART II – ElectroNet's Claim for False Advertising and Promotion**

1.   Has ElectroNet proven by a preponderance of the evidence that Sprint-Florida made a false representation of fact about its own or another's product or services in commercial advertising or promotion, which was literally false?

Yes _____                    No _____

*If Yes, go to Question 2; if No, proceed to Part III.*

52

2.      Has ElectroNet proven by a preponderance of the evidence that Sprint-Florida made a false representation of fact about its own or another's product or services in commercial advertising or promotion, which was not literally false but was likely to mislead and confuse consumers?

Yes _____            No _____

*If Yes, go to Question 3; if No, proceed to Part III.*

3.      Has ElectroNet proven by a preponderance of the evidence that Sprint-Florida's statements were made in the context of "commercial advertising"?

Yes _____            No _____

*If Yes, go to Question 4; if No, proceed to Part III.*

4.      Has ElectroNet proven by a preponderance of the evidence that Sprint-Florida's statement actually deceived or had the tendency to deceive a substantial segment of its audience?

Yes _____            No _____

*If Yes, go to Question 5; if No, proceed to Part III.*

5.      Has ElectroNet proven by a preponderance of the evidence that Sprint-Florida's statement was material, in that it was likely to influence the purchasing decision?

Yes _____            No _____

*If Yes, go to Question 6; if No, proceed to Part III.*

6.      Has ElectroNet proven by a preponderance of the evidence that it was injured and suffered damages as a result of Sprint-Florida's false statement?

Yes _____            No _____

*If Yes, go to Question 7; if No, proceed to Part III.*

53

7. If you have answered "Yes" to each of the Questions in this Part II, please state the damages you believe ElectroNet has proved for its claim of false advertising and promotion:

$_____

*Proceed to Part III.*

## PART III – ElectroNet's Claim for Fraud

1. Has ElectroNet proven by a preponderance of the evidence that Sprint-Florida made one or more misrepresentations of a material fact?

Yes _____                    No _____

*If Yes, go to Question 2; if No, proceed to Part IV.*

2. Has ElectroNet proven by a preponderance of the evidence that Sprint-Florida knew or should have known that the misrepresentation was false?

Yes _____                    No _____

*If Yes, go to Question 3; if No, proceed to Part IV.*

3. Has ElectroNet proven by a preponderance of the evidence that Sprint-Florida intended to induce ElectroNet to rely and act upon the misrepresentation?

Yes _____                    No _____

*If Yes, go to Question 4; if No, proceed to Part IV.*

4. Has ElectroNet proven by a preponderance of the evidence that ElectroNet actually relied upon the misrepresentation and that its reliance was reasonable?

Yes _____                    No _____

*If Yes, go to Question 5; if No, proceed to Part IV.*

5. Has ElectroNet proven by a preponderance of the evidence that it suffered injury or damage as a result of its reasonable reliance?

54

Yes _____                          No _____

*If Yes, go to Question 6; if No, proceed to Part IV.*

6.      Has ElectroNet proven by a preponderance of the evidence that Sprint-Florida acted in bad faith?

Yes _____                          No _____

*If Yes, go to Question 7; if No, proceed to Part IV.*

7.      Has ElectroNet proven by a preponderance of the evidence that Sprint-Florida's conduct did not relate to its performance and duties under the Interconnection Agreement?

Yes _____                          No _____

*If No, go to Question 8; if Yes, proceed to Part IV.*

8.      Has ElectroNet proven by a preponderance of the evidence that it should be awarded damages to compensate it for Sprint-Florida's fraud?

Yes _____                          No _____

*If Yes, go to Question 9; if No, proceed to Part IV.*

9.      If you have answered "Yes" to each of the questions in this Part III, please state the damages you believe ElectroNet has proved for its claim of fraud:

$_____

*Proceed to Part IV.*

## PART IV – ElectroNet's Claim for Breach of Contract

1.      Has ElectroNet proven by a preponderance of the evidence that Sprint-Florida has failed to perform any of its material duties under the Interconnection Agreement?

Yes _____                          No _____

*If Yes, go to Question 2; if No, proceed to Part V.*

55

2.     Has ElectroNet proven by a preponderance of the evidence that Sprint-Florida's failure to perform was a legal cause of damages sustained by ElectroNet?

            Yes _____                      No _____

*If Yes, go to Question 3; if No, proceed to Part V.*

3.     If you answered "Yes" to Questions 1 and 2 in this Part IV, state the amount of damages you believe ElectroNet has proved for its claim of breach of contract.

        $_____

*Proceed to Part V.*

## PART V – Sprint-Florida's Counterclaim for Breach of Contract

1.     Has Sprint-Florida proven by a preponderance of the evidence that ElectroNet has failed to perform its duties under the Interconnection Agreement?

            Yes _____                      No _____

*If Yes, go to Question 2; if No, you are finished, and please return to the Court.*

2.     Has Sprint-Florida proven by a preponderance of the evidence that ElectroNet's failure to perform was a legal cause of damages sustained by Sprint-Florida?

            Yes _____                      No _____

*If Yes, go to Question 3; if No, you are finished, and please return to the Court.*

3.     If you answered "Yes" to both questions in this Part V, state the amount of damages you believe Sprint-Florida has proved for its counterclaim of breach of contract.

        $_____

*Please return to the Court.*

This 17th day of September, 2001.

Respectfully submitted,

John P. Fons
Florida Bar No. 0280836
Jeffry Wahlen
Florida Bar No.0884316
Jason B. Gonzalez
Florida Bar No. 0146854
AUSLEY & McMULLEN
227 South Calhoun Street
Tallahassee, Florida  32301
(850) 224-9115
(850) 222-7560  (facsimile)

AND

Jeffrey S. Cashdan
Barry Goheen
Peter M. Todaro
KING & SPALDING
191 Peachtree Street
Atlanta, Georgia  30303
(404) 572-4600
(404) 572-5100 (facsimile)

COUNSEL FOR
SPRINT-FLORIDA, INC.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been provided by hand delivery, this 17th day of September, 2001, to Thomas M. Findley and Floyd R. Self, Messer, Caparello & Self, P.A., 215 South Monroe Street, Tallahassee, Florida 32301.

Attorney _____